## In re A. F. HARDIE & CO.

(District Court, W. D. Texas, San Antonio Division. February 23, 1906.)

No. 345.

BANKRUPTCY—RIGHT TO DISCHARGE—FALSE STATEMENT BY PARTNER.

A materially false statement in writing made by a partner in the ordinary course of business of the partnership in buying merchandise, for the purpose of obtaining goods on credit and upon which they were obtained by the firm, effects all the partners and debars another partner from the right to a discharge in bankruptcy under Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended in Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684], although he had no knowledge of the fraud.

In Bankruptcy.   On application for discharge.

On May 15, 1905, the firm of A. F. Hardie & Co. and the individual members thereof, to wit, Alva Finley Hardie, his son, James Mallory Hardie, and Max Kaliski, were, upon the petition of creditors, adjudged bankrupt. An application for discharge was filed by the members of the firm on the 27th of October following. Opposition to the discharge having been filed by the Swofford Bros. Dry Goods Company, two of the partners, A. F. Hardie and Kaliski withdrew their prayer for discharge, leaving the application to stand in behalf of J. M. Hardie alone. The principal ground of opposition urged by the Swofford Bros. Dry Goods Company was the following: "That on, to wit, the 13th day of February, 1905, the said firm made and delivered to the said Swofford Bros. Dry Goods Company, a statement in writing materially false respecting the condition of the business of the said firm. By the said statement it appears that the said firm had assets of the value of $155,116 and liabilities of $65,500. Said statement further shows that the said A. F. Hardie had in real estate and real estate notes, $60,000. The said Swofford Bros. Dry Goods Company shows that the said statement was absolutely false in this: That the said A. F. Hardie did not have real estate or real estate notes of the value of $60,000, or anything approximating that amount. That the value of the assets of the said firm did not exceed $60,000 and that the liabilities of the said firm were approximately $100,000. That while the said statement shows the said firm to be worth, over and above all liabilities, the sum of $90,000, still in truth and in fact the said firm was then insolvent. The said statement was made by the said firm to the Swofford Bros. Dry Goods Company for the purpose of inducing the said Swofford Bros. to sell to the said A. F. Hardie & Co. goods, wares, and merchandise on credit, and that they relied upon the truth of the said statement and did sell to the said A. F. Hardie & Co. goods, wares, and merchandise aggregating the sum of $1,500 and upward, which said goods, wares, and merchandise have never been paid for." After taking proofs the referee found the facts, substantially, as set forth in the specification of opposition referred to, and made this additional finding: "I find that said statement was made by Alva Finley Hardie, and without the knowledge of said James Mallory Hardie, but at that time James Mallory Hardie was a member of the aforesaid partnership and bound by its statements issued as aforesaid." It is clearly shown by the record that, after A. F. Hardie made the statement, the Swofford Bros. Dry Goods Company shipped merchandise to the firm of A. F. Hardie & Co. at San Antonio, amounting in value to about $1,300, and that the merchandise was received by the firm and commingled with the stock on hand.

Gordon Bullitt and Mason Williams, for James Mallory Hardie, bankrupt.

Crawford & Crawford, for opposing creditors.

MAXEY, District Judge (after stating the facts). Upon the subject of the discharge of a bankrupt it is provided, among other things, by the fourteenth section of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]), as amended by the act of Congress approved February 5, 1903 (32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1905, p. 684]), as follows:

"The judge shall hear the application for a discharge, and such proofs and pleas as may be made in opposition thereto by parties in interest, at such time as will give parties in interest a reasonable opportunity to be fully heard, and investigate the merits of the application and discharge the applicant unless he has * * * (3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit."

That the false statement, made by A. F. Hardie to the Swofford Bros. Dry Goods Company, was material and had the effect of deceiving the latter, are conclusions readily deducible from the proof, and that the deceit thus practiced operated as a fraud upon the dry goods company will scarcely be controverted. The only question of law to be determined is whether the fraud, thus committed by A. F. Hardie, may be interposed as a bar to the discharge of J. M. Hardie, who, it is conceded, did not participate in the wrongful act and had no knowledge of its perpetration. It is said by Mr. Parsons, in his work on Partnership, that:

"Partners are liable in solido for the tort of one, if that tort were committed by him as a partner, and in the course of the business of the partnership. This principle is frequently illustrated by cases in which a partnership is held liable for injury caused to third persons by their having acted upon the false and deceitful representations made to them by one partner." Parsons, Part. (3d Ed.) p. 163.

In Castle v. Bullard, 23 How. 188, 189, 16 L. Ed. 424, the following language was used by the Supreme Court:

"Judge Story says, in his valuable work on Partnerships, that torts may arise in the course of the business of the partnership for which all the members of the firm will be liable, although the act may not in fact have' been assented to by all the partners. Thus, for example, if one of the partners should commit a fraud in the course of the partnership business, all the partners may be liable therefor, although they may not all have concurred in the act. So, if one of a firm of commission merchants should sell goods consigned to the firm, fraudulently, or should sell goods so consigned in violation of instructions, all the partners would be liable. Story on Part. § 166; Collier on Part. (Am. Ed. 1848) §§ 445, 457; Nicoll v. Glennie, 1 Maule & Selw. 568. In precise accordance with this view of the law, it was said, and well said, by the court, in Olmsted v. Hotailing, 1 Hill (N. Y.) 318, that it does not lie with one to claim property through the fraudulent act of another, whether partner or agent, without being affected by that act the same as if it were his own; and we think the same principle must apply in a case like the present, where a firm doing business as commission merchants have received the fruits of the fraud in the commissions earned for transacting the business."

The principle was stated as follows by Mr. Justice Harlan, speaking for the Supreme Court in Strang v. Bradner, 114 U. S. 561, 562, 5 Sup. Ct. 1038, 1041, 29 L. Ed. 248:

"Each partner was the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the conduct

of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge. This is especially so when, as in the case before us, the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business. Stockwell v. United States, 13 Wall. 531, 547, 548, 20 L. Ed. 491; Story on Partnership, §§ 1, 102, 103, 107, 108, 166, 168; Chester v. Dickerson, 54 N. Y. 1, 13 Am. Rep. 550; Locke v. Stearns, 1 Metc. (Mass.) 560, 35 Am. Dec. 382; Lothrop v. Adams, 133 Mass. 471, 43 Am. Rep. 528; Blight's Heirs v. Tobin, 7 T. B. Mon. (Ky.) 612, 18 Am. Dec. 219; Durant v. Rogers, 87 Ill. 508; Collyer on Partnership (Wood's Ed.) §§ 446, 449, 450; Lindley on Partnership (Ewell's Ed.) § 302."

In Strang v. Bradner, the principle was applied in holding a discharge insufficient to protect innocent partners from a debt fraudulently incurred by their copartners. See Coll. Bankr. (5th Ed.) 210, 211.

While the cases cited do not decide the very question involved in the present controversy, they nevertheless distinctly hold that a fraud committed by one partner in the course of the partnership business renders the firm pecuniarily liable to the aggrieved party for the wrongful act of the offending member. In the case before the court it is shown by the record that A. F. Hardie was the financial agent of the firm and one of its buyers; that the false statement was made by him in the course of the partnership business and for the benefit of the firm, and that the firm actually received and appropriated the fruits of the fraudulent transaction. If, under the facts stated, the law would impute the fraud of the delinquent partner to innocent members of the partnership to the extent of imposing upon the firm a pecuniary liability, no sound reason is perceived why the principle should not be applied to the present proceeding by refusing a discharge to a member not assenting to the fraud. The court is of the opinion that the principle is applicable to both cases, and hence that the prayer of J. M. Hardie for a discharge should be denied. The attorneys of the applicant insist that a discharge should be granted upon the authority of In re Hyman (D. C.) 97 Fed. 195, In re Schultz (D. C.) 109 Fed. 264, and In re Blalock (D. C.) 118 Fed. 679. The case last cited scarcely seems to the court to be pertinent. Judge Brown, of the Southern district of New York, decided the two cases of In re Schultz, supra, and In re Meyers (D. C.) 105 Fed. 353. And in expressing a doubt as to the correctness of the ruling of In re Hyman, supra, he employed the following language in the case of In re Meyers:

"As respects the destruction or concealment of books of account, 'with fraudulent intent to conceal the true financial condition and in contemplation of bankruptcy,' under subdivision 'b' (2) of section 14, if the question were before me de novo, I should be inclined to consider, as no 'offense' or penal element exists in the requirements of this subdivision, that the principal is responsible, as respects a discharge in bankruptcy, for the fraudulent conduct of the agent to whom the whole business has been committed, as in civil cases generally, where the fraud has been committed for the principal's benefit. But as that point seems to have been involved in the case last

cited, and a contrary decision was then made by Judge Thomas sitting in this district, it will be followed unless otherwise ruled upon appeal." 105 Fed. 354.

In the Schultz Case he further. said:

"If in any case fraud can be similarly imputed to an innocent partner on account of the fraud of his copartner or other agent, as respects the false or improper keeping of books of account (see In re Meyers (D. C.) 105 Fed. 353, 354), it can only be in cases where the fraudulent entries or omissions have reference to partnership transactions so as to fall within the general scope of the partner's or agent's authority. The frauds in the book-keeping in this case related to transactions of a wholly different character, in which the partner was defrauding his copartner, as well as his creditors, in reference to transactions wholly outside of the partnership authority." 109 Fed. 265.

The distinction between the Case of Schultz and the one before the court is obvious, since here, as has been already shown, the false statement made by A. F. Hardie, upon the faith of which credit was extended by the dry goods company, was an act committed, for the benefit of the firm, by one partner in the regular course of the partnership business.

The prayer of the applicant, J. M. Hardie, for a discharge, will be denied.