## FRANK v. MICHIGAN PAPER CO. et al.

(Circuit Court of Appeals, Fourth Circuit. July 12, 1910.)

In Bankruptcy, No. 966.

**1. BANKRUPTCY (§ 423\*)—PARTNERS—EFFECT OF DISCHARGE.**

Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428) § 17, as amended by Act Cong. Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1909, p. 1310), providing that a discharge in bankruptcy shall not release the bankrupt from judgment in actions for fraud or obtaining property by false pretenses or representation, etc., a false representation by one partner by means of which property was obtained by the firm, will be imputed to the other partners to the extent of holding them civilly liable for the debt, and their discharge in bankruptcy will not discharge their liability for such debt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 818; Dec. Dig. § 423.\*]

**2. BANKRUPTCY (§ 407\*)—PARTNERS—RIGHT TO DISCHARGE.**

Where, after a firm had been adjudged an involuntary bankrupt, one of the partners filed an individual voluntary petition in bankruptcy and was adjudged a bankrupt, the fact that one of the other members of the firm had made false representations in writing concerning the credit of the firm, and by virtue thereof had obtained goods for the firm on credit, in which representations the petitioning partner did not participate, such representations were unavailable to bar the petitioning partner's right to discharge, though the discharge, when granted, might not be a defense to the petitioning partner's liability for the debts contracted on the faith of such representations.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 760; Dec. Dig. § 407.\*]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore.

In the matter of Nathan B. Frank, bankrupt. From an order denying the bankrupt's application for discharge on objections of the Michigan Paper Company and Kalamazoo Paper Company, the bankrupt appeals. Reversed.

---

On the 21st day of May, 1908, the firm of McDonald & Frank, at the time composed of Walter A. McDonald and Nathan B. Frank, was adjudicated an involuntary bankrupt. Subsequently, on the 25th day of November, 1908, said Nathan B. Frank filed his individual voluntary petition in bankruptcy, and on the same day was adjudicated a bankrupt. On January 2, 1909, he filed his petition praying for a discharge, and on January 18, 1909, the Michigan Paper Company and the Kalamazoo Paper Company, two corporation creditors of the firm of McDonald & Frank, filed their separate specifications of objection to the discharge of the bankrupt, Nathan B. Frank, setting forth that on September 30, 1907, the bankrupt firm of McDonald & Frank (then McDonald, Frank & McDowell), through McDonald, one of its members, wrote unto Elmer H. Haas, of New York, selling agent of both of said creditors, a letter in which said firm set forth that their capital amounted to the sum of $5,000, whereas said firm did not have the sum of $5,000 as their capital, but only had in their business about $2,500 as capital, and that the said creditors, upon said statement, "sold unto said firm of McDonald & Frank, of which said Nathan B. Frank was a member, large quantities of paper on credit, and that the said bankrupt firm as aforesaid have obtained the said property on credit upon a false statement in writing." To these specifications the bankrupt interposed his demurrer, and, the same being overruled, filed his answer, identical in form to the several specifications of objection filed by the corporate creditors. Upon the hearing before the District Court no evidence was introduced, but, in lieu thereof, the following agreed statement of facts was presented to the court:

"It is hereby agreed by Edward M. Hammond, attorney for the Kalamazoo Paper Company and the Michigan Paper Company, and E. Allan Sauerwein, Jr., attorney for the bankrupt, that the matters and facts upon which the specifications of the said paper companies against the discharge in bankruptcy of the said bankrupt shall be heard, are as follows:

"That Walter McDonald and Robert McDowell were engaged in the paper jobbing business prior to the month of April, 1907, and during said month the bankrupt, Nathan B. Frank, was invited to and did become a partner, the firm name then being changed to McDonald, Frank & McDowell; that McDonald invested two hundred and fifty dollars ($250) in cash and gave his note for a thousand; McDowell invested two hundred and fifty dollars ($250) in cash and gave his note for a thousand; and Frank invested twenty-five hundred dollars ($2,500) in cash—all of which constituted the capital of the firm; that on the 20th day of September, 1907, the said McDonald wrote to one Elmer H. Haas, at New York, the selling agent of the said Paper Companies, the following letter:

"We have your favor of the 19th and thank you for the same. In regard to our responsibility, would say that our capital amounts to $5,000; as you know we are all young men, doing all our own work together with small expenses so far as warehouse is concerned. We have dealt with mills only whom writer knows very well, and no one has refused to give us a good line of credit. For instance, we have been buying right along from P. H. Glatfelter in the way of book paper. We have discounted every month and now owe them about $2,000. We would rather you not to write Glatfelter, however, because we don't want him to know whom else we are buying book paper from, but we would refer you to N. Frank & Sons, #1402 Mullikin St., and Hubbs & Corning Company, both of Baltimore and the Lee Paper Co. of Vicksburg, Mich. We have bought some little from Kalamazoo as you know, whom we have paid promptly. We also inclose herewith some letters which speak for themselves.

" 'Now while our capital is small, as stated above, our expenses are small, and we are going along carefully, not overstepping the mark. Of course, there may be times when we will have to ask some of our mills for a little time, but thus far we have been able to discount. Would further state that we are not selling anybody but those who discount and pay their bills promptly. We are getting a very good percentage of the business in Baltimore and some little out of town business. Altogether, we feel very much encouraged, and confidently believe that your mill will make no mistake in

placing their paper with us. Kindly return the inclosed letters and let us hear from you by an early mail. Thanking you for past favors, we are,

"'Yours truly, McDonald, Frank & McDowell,

"'By McDonald.'"

"That said letter was written by the said McDonald for the purpose of opening an account with the said paper companies, and that the firm did thereafter by virtue of said letter obtain goods from them to the amount of $—— upon which credit payments of $—— were made; that the said McDonald had been engaged for some time in the paper business, and attended to the active management of the same for the firm and particularly to the purchasing of stock; that the said McDowell was the bookkeeper for the said firm, and that the said Frank, who, at the time of the formation of the said partnership was not twenty-one years of age, had no knowledge of the business, and, during the existence of the partnership, he attended solely and only to the selling of goods; that said Frank, during the existence of the partnership, undertook to buy out said McDowell's interest for $250, but because he could not get his note discounted at his bank, he gave his note to the firm who indorsed it, and it was then discounted to Mr. Frank's father. The firm then assumed the purchase of the interest. After bankruptcy Mr. Frank's father paid the note; that said Frank became twenty-one years of age on the —— day of ——; that the said Frank knew nothing whatever of the writing of the said letter at the time it was written, nor at any time thereafter, until the firm was thrown into involuntary bankruptcy; that he did not know at any time prior to said bankruptcy of any statements whatsoever having been made to the said paper companies for the purpose of inducing a line of credit, nor did he know what was the inducing cause of the extension of credit by the said paper companies, nor did he ever wittingly derive any benefit from any credit so wrongfully obtained.

"Edward M. Hammond,

"Atty. for Michigan Paper Co., and Kalamazoo Paper Co.

"E. Allan Sauerwein, Jr.,

"Attorney for Bankrupt."

E. Allan Sauerwein, Jr., for appellant.

Edward M. Hammond, for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and KELLER, District Judge.

KELLER, District Judge (after stating the facts as above). Section 14b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1909, p. 1310]), provides that upon the bankrupt's application for a discharge the judge shall "investigate the merits of the application and discharge the applicant unless he has * * * (3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit. * * * *"

Section 17, as amended in 1903, provides that a discharge in bankruptcy "shall release a bankrupt from all of his provable debts except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations. * * *"

The only question to be decided here is whether the action of McDonald in making the statement of September 30, 1907, can be successfully urged to prevent the granting of a discharge to Frank upon proceedings growing out of his individual voluntary petition in bank-

ruptcy. In this connection it becomes important to distinguish between the *right* to a discharge and the *effect* of a discharge in bankruptcy. With regard to the latter, we think it clear from the language quoted from section 17 of the present bankruptcy act as amended in 1903 that a false representation by one partner, by means of which property was obtained by the partnership, will in law be imputed to the other partners to the extent of holding them civilly liable for the debt, and their discharge in bankruptcy will not discharge their liability as to such debt. Strang v. Bradner, 114 U. S. 555, 5 Sup. Ct. 1038, 29 L. Ed. 248; Schroeder v. Frey, 60 Hun (N. Y.) 58, 14 N. Y. Supp. 71; Collier on Bankruptcy (6th Ed.) page 225. As applied to partnership debts these questions ought to be considered in connection with the fact that under the present bankruptcy act a partnership is a "legal entity"; consequently a materially false statement made in writing by one of the partners (without the knowledge of the others) for the purpose of obtaining credit on behalf of the partnership, and by means of which such credit is obtained, is (1) the act of the individual partner making it, and (2) the act of the legal entity called the "partnership," and hence both the partner making such statement and the legal entity called the "partnership" are chargeable with having done one of the acts, the doing of which will, upon objection being properly made, prevent the granting of a discharge under section 14b, Bankr. Act 1898, as amended in 1903; and it follows that any "party in interest" can successfully oppose the discharge of the acting partner and of the "partnership."

Under the existing statute the question of what will bar a discharge has now been passed upon by at least three different Circuit Courts of Appeals, and all of these decisions are in substantial harmony in holding that the bar to a discharge by reason of a false statement in writing is confined to such person or persons as actually made such statement with the intention to deceive, and to the partnership entity of which such person was a member.

In Hardie v. Swafford Bros. Dry Goods Co., 165 Fed. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785, the Circuit Court of Appeals for the Fifth Circuit (Shelby, Circuit Judge, dissenting), reversing the District Court for the Western District of Texas (143 Fed. 607), in a case in every way similar to the one at bar, held that a materially false statement in writing made by a partner in the ordinary course of business of the partnership for the purpose of obtaining goods on credit, and by means of which they were so obtained by the firm, is not ground for refusing a discharge in bankruptcy under Bankr. Act July 1, 1898, c. 541, § 14b, c. 3, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1026), to another partner who did not participate in the wrongful act and had no knowledge of it.

In W. S. Peck & Company v. Lowenbein, decided February 21, 1910, by this court (178 Fed. 178), it appeared that on September 14, 1907, Lowenbein, a member of the firm of Owens & Lowenbein, addressed a letter to W. S. Peck & Co., Baltimore, Md., which letter contained a statement of the financial condition of the firm of Owens

& Lowenbein; that said statement was based almost entirely upon information derived by Lowenbein from Owens in the preparation of it; that matters in the statement other than those furnished by Owens were not misleading, being, in the main, true. The court affirmed the judgment of the court below, refusing a discharge to Owens and granting that to Lowenbein, saying:

"It is the evident purpose of the bankruptcy act to protect that unfortunate class of debtors who are unable to pay their debts, by giving them a discharge, thus affording them an opportunity to engage in business again, while, on the other hand, it is manifestly intended to deny a discharge to those whose conduct has been such as to show that they obtained credit by false statements calculated and intended to deceive and thereby defraud their creditors. Construing the act with these ends in view, it would be manifestly unjust to deny a discharge to a debtor when it appears, as it does in this instance, that the statement which he made was not actuated by any fraudulent purpose. This finding of fact has been approved by the learned judge who heard the case below, and is within itself conclusive in so far as the question involved in this controversy is concerned."

In Gilpin v. Merchants' National Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023, the bankrupt, upon the request of a bank from which he had asked accommodation, for a financial statement, signed a statement form in blank, and delivered the same to his bookkeeper, requesting him to make an exact statement of his condition, for the bank, to which the bookkeeper replied that he could not (the posting of his books being in arrear), but that he would make an approximate statement and send it to the bank. The statement was made by the bookkeeper, marked "approximate," and sent to the bank, and upon the faith of this statement the bank extended credit. The referee found that, although the falsity of the statement sent to the bank was proved, the fact that the bankrupt knew it to be false or did not know it to be true, was not proved, and said in his report:

"There is no evidence to support the contention that the bankrupt knew or had any reason to believe that the statement sent to the bank by the bookkeeper was false, or that the bankrupt intended in any way to deceive the bank."

Upon these facts the Circuit Court of Appeals for the Third Circuit, in an opinion by Gray, Circuit Judge, held that the word "false" as used in section 14b of the bankruptcy act, as amended by Act Feb. 5, 1903, which makes it a ground for denying a discharge to a bankrupt that he has obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit, means more than merely erroneous or untrue, being used in its primary legal sense as importing an intention to deceive, and such a statement, in order to constitute a bar to a discharge, must have been knowingly and intentionally untrue.

It must be manifest that the intent to deceive can never be imputed to one who not only takes no part in making the written statement, but, as in the case at bar, knows nothing of it. We believe that the view taken by the Circuit Court of Appeals for the Third Circuit of the meaning of the word "false," as used in this section, is the correct one,

and the decision above referred to is in entire harmony with the Low-enbein Case decided by this court.

Taking the view that the *right* to a discharge is determined by the good faith of the bankrupt, and that the *effect* of such discharge is to be determined in accordance with a proper recognition of his civil liability for the acts of partners and other agents, we come to the conclusion that the court below erred in refusing to grant a discharge to the bankrupt.

The order of the District Court for the district of Maryland, made and entered on the 22d day of January, 1910, sustaining the specifications of objection to the discharge of the appellant, and refusing to grant him a discharge is therefore reversed, with costs, and the cause is remanded to the District Court for further proceedings herein not inconsistent with this opinion.

Reversed.