### In re TAFF & CONYERS.

(District Court, N. D. Georgia, N. W. D. November 8, 1910.)

#### No. 247.

1. BANKRUPTCY (§ 426*) — DISCHARGE — OBJECTIONS — FALSE STATEMENT FOR CREDIT.

Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310), provides for the denial of a bankrupt's discharge where he has obtained property on credit from any person on a materially false statement in writing made to such person to obtain such property on credit. *Held*, that where bankrupts had made repeated false statements to merchants from whom they desired to buy goods, on the faith of which goods were sold to them on credit, and the statements were made under such circumstances as to preclude any doubt that the same were willfully and knowingly made, the discharge should be denied.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 426.*]

2. EQUITY (§ 409*)—FINDINGS OF MASTER—REVIEW—VACATION.

Findings of fact by a master should be clearly and manifestly incorrect to justify the court in setting them aside.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 920–923; Dec Dig. § 409.*]

In the matter of bankruptcy proceedings of Taff & Conyers, composed of J. C. Taff and J. M. Conyers. Objections having been filed to the bankrupts' application for a discharge, the same was denied by the referee, and the case was submitted to a special master, who reported in favor of a denial of the discharge, and the report was confirmed.

The following is the report of the master:

#### Statement of Facts.

J. C. Taff and J. M. Conyers, partners, composing the firm of Taff & Conyers, bankrupts, filed their petition for a discharge from the debts of the copartnership of Taff & Conyers and their own individual debts. Objections to the discharge were filed by Ragan, Malone & Co., and J. M. Robinson, Norton Company, creditors. Application for discharge was referred to C. D. McCutchen, special master, to hear and determine the questions of law and of fact and to make report on the same.

The main grounds relied upon by the creditors are that the bankrupts had obtained certain property on credit from Ragan, Malone & Co., and J. M. Robinson, Norton Company, upon materially false statements, in writing, made to said creditors for the purpose of obtaining such property on credit.

There was a motion to dismiss the objections by Robinson, Norton Company, and counsel for objecting creditors opposed this motion being heard and passed upon by the special master, upon the ground that the special master had no power to hear and determine such motion. The special master refused to strike this motion, but allowed the same to remain in the record and reported the same to the court for its action.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The specific objections to the discharge of J. C. Taff are that he made materially false statements, in writing, to Ragan, Malone & Co., on December 26, 1905, and November 20, 1906, in each of which he omitted to include an indebtedness to his father of $600, and in the latter of which he falsely stated that the amount of capital with which he began business was $800, whereas his entire capital was the $600 borrowed from his father and still unpaid.

The specific objections against the discharge of J. C. Taff and J. M. Conyers, partners, composing the firm of Taff & Conyers, are that J. C. Taff, with the knowledge and consent of J. M. Conyers, made a materially false statement, in writing, to Ragan, Malone & Co., on March 20, 1907, wherein he stated their total liabilities to be $1,654.01, indebtedness for borrowed money $200, and denied any indebtedness to relatives, and stated the net worth of the firm as $5,939.53; whereas, their liabilities were $3,000, or other large sum, $1,500 being money borrowed from and owing to relatives, and the firm was practically insolvent. Further specifications are made purporting to show specific debts which were omitted from said statement.

The objecting creditors also urged a materially false statement made to J. M. Robinson, Norton Company, on August 2, 1907, wherein the bankrupt stated merchandise on hand to be $9,000, liabilities $900, indebtedness to bank nothing, indebtedness to relatives and friends nothing, their total net worth in business $9,000, and their total net worth, in and out of business, $10,100; whereas the merchandise on hand was not worth over $4,500, indebtedness to bank was $1,000, indebtedness to relatives and friends was $1,500, and the firm and the individual members thereof were practically insolvent, that they owed for borrowed money on January 2, 1907, $400, when in fact they actually owed $1,500.

Further specifications purport to show specific debts omitted from said statement.

Objecting creditors satisfactorily established the making of and the obtaining of property by virtue of each of said alleged false statements, except that of August 2, 1907, on which no credit was extended; the J. M. Robinson, Norton Company apparently not being satisfied with the statement, or for other reasons declined to sell. The special master, however, allowed the same to go in evidence for the purpose of showing the intent with which statements were made upon which credit was extended.

Each of said statements contained the usual allegation that it was "given for the purpose of obtaining credit" and "shall be binding for each purchase now and hereafter made, unless changed by written authority from the undersigned," and "that the above property is in my (or our) own name, and title perfect, paid for, and no mortgages or liens in any shape upon it," and contains the figures above quoted.

After stating the above in more detail than has been given, the special master proceeds to pass upon the questions involved, as follows:

"Section 14b (3) places the penalty upon the obtaining of the property upon materially false statements in writing, and not upon the giving of false statements unless property is obtained on credit by virtue of the making of the false statement. The statements were all clearly materially false, and were so grossly inaccurate as to eliminate all idea that men of average intelligence could have been innocently mistaken in the facts stated. I find that J. C. Taff began business about January 5, 1906, and on December 26, 1905, he gave a statement to Ragan, Malone & Co. for the purpose of obtaining credit, and did obtain credit thereon, showing cash on hand in bank $800 and no liabilities, while it developed at the hearing that Taff had no such amount in cash in bank and that his total assets probably amounted to much less at that time. It also appeared on the hearing that this $800 in cash on hand, listed as assets on December 26th, consisted of $200, which J. C. Taff claims to have had and $600 more which he expected to borrow from his father, and which he did borrow from a bank, probably during the January following, with his father as security:

"On November 20, 1906, after making the statement aforesaid, J. C. Taff gave another statement to Ragan, Malone & Co., for the purpose of obtaining credit, and in which statement he clearly omitted to state this $600 liability to the bank and his father, which is perfectly clear was then subsisting. Taff'

admits this virtually, but claims, in extenuation, that his mother had told him that his father had expected to give him the $600, which he found out later was a mistake on the part of his mother. It seems to clearly appear that the property obtained by J. C. Taff, on the strength of the two statements aforesaid, has been paid for, and it is urged by bankrupt's counsel that, as it has been paid for, therefore the objections on this score are not good. The falsity of these two statements is only treated as a circumstance bearing upon the falsity of the last statement on March 20, 1907, hereafter more fully dealt with, and as throwing light upon the conduct of the bankrupts and their lack of good faith in making the last statement aforesaid.

"In January, 1907, J. C. Taff went into partnership with J. M. Conyers, forming the partnership firm of Taff & Conyers. Taff & Conyers sought to purchase goods and merchandise from Ragan, Malone & Co., in Atlanta, Ga., on March 20, 1907, and went to the office of Ragan, Malone & Co. for that purpose. Ragan, Malone & Co. were represented at this conference by their Mr. Ragan, and an employé, Mr. Barnwell. A statement was required of Taff & Conyers throwing light upon their financial standing, and there is no doubt that the nature of this statement and the purpose for which it was intended, i. e., the procuring of credit, was well understood by both Taff and Conyers, who were present. The statement was made on a blank furnished by Ragan, Malone & Co., J. C. Taff, speaking for Taff & Conyers, in the presence of J. M. Conyers, furnishing the details as to items and amounts of assets and liabilities, Barnwell, for Ragan, Malone & Co., writing down the specified items and amounts. J. M. Conyers, the other partner in Taff & Conyers, heard all the information given, made no objections to nor corrections in the statements made by J. C. Taff, and the statement was signed in the presence of all 'Taff & Conyers by J. C. Taff.' J. C. Taff and J. M. Conyers admitted all these facts, but denied knowledge of the contents of the statement as contained in the regular printed portions of same and particularly the following clause: 'For the purpose of obtaining credit, and this statement shall be binding for purchases now and hereafter made, unless changed by written authority from the undersigned.' Bankrupts claimed, and it is probably true, that the goods obtained upon credit upon that particular date (March 20, 1907) were all paid for later, and that the present debt to Ragan, Malone & Co. of $388.60 was sold at a later date. They urge further that their ignorance of the provisions in the statement making it a basis for continuing credit relieves them from the penalty of the original falsity of the statement, even though Ragan, Malone & Co. sold later the unpaid bill, in good faith, upon the strength of the statement. They urge further that Ragan, Malone & Co. acted also upon an oral statement having been made by a member of the firm to the effect that they were enjoying a good business and doing well.

"It is held by the referee that the statement made was a 'continuing statement,' and under the circumstances shown in this case, where two intelligent young men, thoroughly able to understand what they were doing, executed a statement under the circumstances shown, containing this clause, they should be bound by the terms of the statement. If they did not undertake to find out the contents of the statement, the nature of the transaction was such as to demand their careful attention and full understanding of its terms, and to forever prohibit them from setting up their willful, or at least reckless, failure to look into it and correct it before signing it and receiving the goods in question, knowing this statement to be in the possession of the seller. A prudent man who was free from any intention to do wrong could never act as they admitted they did in this case, and, in the absence of any claim whatever of fraud on the part of Ragan, Malone & Co., it must be held that the goods sold later by Ragan, Malone & Co. on the strength of this statement were obtained by the bankrupts on a false statement in writing within the meaning of section 14b (3) of the bankruptcy act.

"This statement means nothing more or less than that it is made for the purpose of obtaining 'a line of credit' with Ragan, Malone & Co., and is a reasonably fair statement which requires nothing but fair treatment from the maker. The requirement that it shall be changed in writing is not oppressive or unreasonable in any sense. The fact that a conversation was had between them later and some statement was orally made does not alter the case. The

testimony of Ragan that the sale of the goods was induced by the statement is positive.

"The bankrupts' defense that they did not read the contract and did not intend to deceive is weakened materially when the fact is considered that all four of the statements introduced in evidence are false and grossly false. This is true as to the two statements made by Taff individually and the two statements made by Taff & Conyers, one to Ragan, Malone & Co., and one to J. M. Robinson, Norton Company. The referee is forced to the conclusion by the repeated false statements made by the bankrupts that they willfully and deliberately and systematically were making fraudulent statements for the purpose of obtaining unrightful credit, and in this connection at least the first two statements made by J. C. Taff to Ragan, Malone & Co., and the last statement to J. M. Robinson, Norton Company, by Taff & Conyers, are to be seriously considered.

"The contention of the bankrupt that the statement of March 20, 1907, was made in the office of Ragan, Malone & Co., without access to their books and papers, does not seem to the referee sufficient to excuse the gross inaccuracy of the statement. It appears satisfactorily that the bankrupts knew they would probably be called upon to make a statement, and the misstatement made as to their true financial standing is too glaring to be excused on the ground that they were inadvertent. In this connection, the statement made later to J. M. Robinson, Norton Company, on August 2, 1907, was, if possible, more grossly inaccurate than the other, and yet this statement was made at their own place of business with full access to all books and papers. In this statement of August 2, 1907, their total liabilities are admitted to have been considerably larger than that stated and the net worth probably only a fraction of the amount stated. J. M. Conyers admitted readily on the stand that the statement was wrong to the extent of at least $2,000 or $3,000. Some five or six months after making this false statement, showing $10,100 net worth, they were in bankruptcy, hopelessly insolvent, and at least one partner, Conyers, had full knowledge of the firm's doubtful solvency several months prior to the bankruptcy. Indeed, there is little room to doubt that both bankrupts knew of the insolvency of the firm prior to the making of this statement of August 2, 1907.

"I find that the statement of March 20, 1907, was false in the following particulars, hereinafter immediately set out, and that the statement in question was made under such circumstances as to preclude any doubt that the same was willfully and knowingly so made, as follows:

"First. In said statement bankrupts stated their total liabilities to be $1,-654.01; whereas, I find that their total liabilities on said date, individual and partnership combined, were fully $3,000, and possibly greater.

"Second. I find that said statement was false, in that bankrupts stated that they were not indebted to wife or relative in any amount; whereas, I find that J. C. Taff indirectly was indebted to relatives in a sum of money by reason of relatives signing as his security at banks. J. C. Taff to his father $600 and to Taff's brother $300.

"Third. I find that said statement was false, in that it states bankrupts' net worth, partnership and individual, to be $5,939.99; whereas, I find in fact that said net worth was practically nothing, and at most could not have possibly been more than $1,000.

"Fourth. I find that said statement was materially false, in that it stated the bankrupts' debts in market to be $1,454.01; whereas, the total indebtedness of bankrupts in market amounted to at least $2,000, and probably considerably more.

"Fifth. I find that said statement is materially false, in that it purports to show a list of liabilities in market; whereas, I find that bankrupts omitted to set out therein certain creditors named in the objections filed as follows: Cartersville Grocery Company, Oglesby Grocery Company, and Fain & Stamps, said claims amounting in the aggregate to probably $500. I find that, in addition to the claims specifically alleged, bankrupts omitted a considerable number of other creditors whose claims aggregate a considerable sum of money.

"Sixth. I find that Ragan, Malone & Co. sold to the bankrupts, on the strength of the statement made to them, the property, goods, and merchandise

for the amount of which they have proven their claim in bankruptcy, to wit, $388.60. I find no sufficient excuse for the bankrupts making the false statement in question and am forced to the conclusion, by the nature of the statement and the circumstances surrounding its execution, that the bankrupts willfully and intentionally made the statement, knowing its falsity, for the purpose of obtaining a line of credit and the merchandise in question. I base this finding upon the glaring inaccuracy of the statement of March 20, 1907, and the circumstances surrounding its execution, and also upon the admittedly false statements to Ragan, Malone & Co., December 26, 1905, and November 20, 1906, and to J. M. Robinson, Norton Company of August 2, 1907, which other said statements are considered only to throw light upon the intentions of the bankrupts and to aid in giving proper weight to the excuses offered by the bankrupts for the inaccuracy of the statement of March 20, 1907. The evidence offered is such that credence could not be afforded the bankrupts' contention that they were ignorant of the nature of these statements, did not know of the special clause in relation to the statement being a continuing one, and that the inaccuracy in the statement crept in through inadvertence."

Thos. W. Milner & Son and Colquitt & Convers, for bankrupts.

Paul F. Akin and Smith, Hammond & Smith, for objecting creditors.

NEWMAN, District Judge. The recent case of W. S. Peck Company v. Julius Lowenbein, 178 Fed. 178, 101 C. C. A. 498, 24 Am. Bankr. Rep. 138, decided by the Circuit Court of Appeals for the Fourth Circuit, in which the court was divided, the majority opinion being delivered by Pritchard, Circuit Judge, and the dissenting opinion by Waddill, District Judge, discusses the principal question made by counsel here very clearly, and the two opinions perhaps cite all the material authorities up to February, 1910, when the case was decided. In the majority opinion Judge Pritchard says:

"It is the evident purpose of the bankruptcy act to protect the unfortunate class of debtors who are unable to pay their debts, by giving them a discharge, thus affording them an opportunity to engage in business again, while, on the other hand, it is manifestly intended to deny a discharge to those whose conduct has been such as to show that they obtained credit by false statements calculated and intended to deceive and thereby defraud their creditors.

"Construing the act with this end in view, it would be manifestly unjust to deny a discharge to a debtor when it appears, as it does in this instance, that the statement which he made was not actuated by any fraudulent purpose."

In his dissenting opinion Judge Waddill states the issue in a paragraph in his opinion as follows:

"The opinion of the majority of the court in this case proceeds upon the theory that the true construction of the act is that credit must be obtained by a false statement, made with fraudulent intent, and for the purpose of defrauding the creditor, clearly changing the language of the act from a "materially false statement in writing" to one which the debtor was actuated in making by a fraudulent motive, and with the purpose, design, and intent to defraud and deceive. The statute says nothing about any fraudulent motive, or any purpose and intent to deceive. It suffices to defeat the discharge, under the existing bankruptcy law, if the debtor makes a statement in writing as to an existing fact, which he knows is untrue in a material particular, as a result of, and but for which he would not have secured credit. The debtor's act must be construed in the light of the effect it had upon his creditor, and if its necessary result was to defraud the creditor, and it did do so, it does not lie in the mouth of the debtor, who has caused loss to another, secured goods, and not paid for them, to claim that he meant no wrong in what he did. He does not occupy that favored position."

Whatever may be the correct construction of subsection b (3) of section 14 of the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1909, p. 1310]), it is clear, if the finding of the special master in this case is correct, that both Taff and the firm of Taff & Conyers must be denied a discharge.

It is not denied by counsel arguing this case at the bar that there were incorrect statements made by these bankrupts for the purpose of obtaining credit. They claim, however, that these statements were not made with fraudulent intent, and that the facts show this, notwithstanding the report of the special master. The special master finds, as shown by his report above, that he "is forced to the conclusion, by the repeated false statements made by the bankrupts, that they willfully and deliberately and systematically were making fraudulent statements for the purpose of obtaining unrightful credit," and "that the statement of March 20, 1907, was false, * * * and that the statement in question was made under such circumstances as to preclude any doubt that the same was willfully and knowingly so made." The special master then cites five particulars in which he finds the statements to be materially false, as shown above. So, taking either view of the matter, as stated above, if the finding of the special master was justified by the evidence, it was clearly correct. I think the evidence before the special master certainly justified, if it did not require, this finding. He had all of the witnesses before him and seems to have carefully considered all the evidence.

The report of a special master upon the facts should be clearly and manifestly incorrect to justify the court in setting it aside. I do not think this is true here.

The report of the special master must be confirmed, and the discharges applied for denied.