### DOYLE v. FIRST NAT. BANK OF BALTIMORE.

(Circuit Court of Appeals, Fourth Circuit.   February 18, 1916.)

#### No. 1390.

BANKRUPTCY ☞407(5)—DISCHARGE—STATEMENT TO OBTAIN CREDIT—"FALSE."
    A member of a bankrupt firm, who did not prepare the false statement, and who knew nothing of its contents, and did not know of the falsity of the statement which he did sign, cannot be denied a discharge under Bankr. Act July 1, 1898, c. 541. § 14b, cl. 3, 30 Stat. 500, as amended by Act June 25, 1910, c. 412, § 6, 36 Stat. 839 (Comp. St. 1913, § 9598), entitling him to a discharge, unless he had obtained money on a materially false statement in writing made by him, since "false" means that which is not true, coupled with a lying intent, and in jurisprudence imports more than the vernacular sense of erroneous or untrue (quoting Words and Phrases, False).

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 760, 761; Dec. Dig. ☞407(5).]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore, in Bankruptcy; John C. Rose, Judge.

Bankruptcy proceedings against Daniel H. Doyle, trustee, and as copartner of J. Herbert Waite. From a decree denying discharge in

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bankruptcy on the objection of the First National Bank of Baltimore (In re Waite, 223 Fed. 853), the bankrupt appeals. Reversed.

Edward M. Hammond, of Baltimore, Md. (R. Bennett Darnall, of Baltimore, Md., on the brief), for appellant.

Frederick C. Colston, of Baltimore, Md. (Venable, Baetjer & Howard, of Baltimore, Md., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the District of Maryland, wherein the bankrupt was denied a discharge.

It appears that the firm of John Turnbull, Jr., & Co. had, at the date of the institution of this proceeding, been engaged in the furniture business in Baltimore for a number of years. The firm was originally composed of John Turnbull, Jr., Samuel R. Waite, Daniel H. Doyle, and J. Herbert Waite. Samuel R. Waite and J. Herbert Waite were the son-in-law and grandson, respectively, of Mr. Turnbull. John Turnbull, Jr., died in the year 1910. In his will he disposed of his interest in the firm of John Turnbull, Jr., & Co., as follows:

"Tenth. It is my present intention to continue the existing partnership with Samuel R. Waite, Daniel H. Doyle and J. Herbert Waite, under the firm name of John Turnbull, Jr., and Company until May 1st, 1915. In case such extension of the partnership is made, or in case I die before making said extension, and said Samuel R. Waite, Daniel H. Doyle and J. Herbert Waite should form a partnership for the purpose of carrying on the business of importers and dealers in carpets and furniture, as now carried on, I authorize and direct my executors to allow my capital in the business as the same may be ascertained at the time of my death to remain until May 1st, 1915. After my said capital has been ascertained I direct that there shall be charged to my capital account and credited to the capital account of my grandson, J. Herbert Waite, the sum of five thousand dollars as a legacy to him, and after charging said amount the balance of my capital thus ascertained is to bear interest at the rate of six per cent. per annum, and there is to be paid out of said interest to my executors the sum of five thousand dollars per annum in equal semi-annual installments accounting from the day of my death, and the balance of said interest is to be added to the principal and is to remain in the business until the expiration of said term of five years from the formation of said partnership. * * * After May 1st, 1915, I direct that my said capital and the surplus interest thereon shall be collected by my executors from said firm, and they shall then pay out the following legacies."

The sum of $105,000 was left in the firm of John Turnbull, Jr., & Co. by the executors in accordance with the directions contained in the will of John Turnbull, Jr. On the 1st of October, 1910, a new partnership agreement was drawn up between Messrs. Waite, Doyle, and Waite. It was then agreed that the capital of John Turnbull, Jr., should be credited to his estate on the books of the new firm as a liability of that firm. Under this agreement the business continued until the date of the filing of the petition in bankruptcy. In 1912 Samuel R. Waite died, and the business was thereafter conducted under the terms of the same partnership agreement as hereinbefore mentioned. Prior to his death the firm kept an account at the National City Bank and had there borrowed on their notes the sum of $22,500. Sam-

uel R. Waite had been a member of the board of directors of the National City Bank. The First National Bank of Baltimore took over the assets of the National City Bank, and with these assets the obliga-tion of the firm of John Turnbull, Jr., & Co. This $22,500, made up of several notes originally given to the National City Bank, was grad-ually reduced, until at the filing of the bankruptcy proceedings the firm only owed $13,500.

It appears that upon the maturity of each note the company would pay a part of the same and renew the balance. The witness Waite tes-tified as to the method of renewing these notes as follows:

"So that when the note came due for $5,000 they made out a new note for $4,000 in renewal of or for $4,500, and sent down a note for $4,500; in the case of the one due December 29th, they sent down on the 26th a note for $4,000, together with a check for $1,000, and handed them in at the dis-count clerk's window, and went away; * * * that there was no new money whatever; that they would send down a check for the total amount of the loan; and on referring to the firm's check book to give an illustration of the method used showed how, for instance, on November 25, 1914, a check was drawn in favor of the First National Bank for $4,000, which took up the note maturing that day, and then the bank was given a new note dated November 24th and maturing February 24th for $3,000."

Henry B. Wilcox, president of the First National Bank, in describ-ing the method by which the $22,500 was reduced to $13,000, testified as follows:

"These notes are extension notes—for instance, there is one for $5,000 due February 24th, and witness presumed that they brought that down, and it was discounted and took up the note that was due that time; but, if it was not a full renewal, they came down on that date and with the proceeds took up a note that was due at that time."

Witness Wilcox also testified:

"That when the notes would become due Turnbull & Co. would pay some-thing on account of them and then renew; that they would not wait until the note was due to renew it; that is, on the date of the maturity of the new note, the old note would be discounted a day or two in advance, and it will be noted that on January 7th that note was renewed by paying $500 and the bank dis-counted $7,000."

Thus it will be seen that no new money was obtained at the time the renewal notes were discounted, but, on the other hand, the $22,-500, by reason of partial payments and renewals for the balance, was gradually reduced from time to time; and it further appears from the testimony that the bank refused to loan the firm any new money.

It was shown that the alleged false statement upon which it is con-tended that money was fraudulently obtained from the bank was pre-pared by E. C. Winter, the bookkeeper, and J. Herbert Waite, who at the time was managing the financial end of the business. It is also shown that, after the death of Samuel R. Waite, J. Herbert Waite managed the financial affairs of the firm. Mr. Waite testified that the duties of appellant were those of salesman, and that he had nothing whatever to do with the firm's financial arrangements. Appellant testi-fied on cross-examination that he never signed any statements that were sent to the bank, except the one dated January 31, 1913, and

that he did not understand its contents; further that during the entire time he was connected with the firm he did not believe that he ever looked at any of the statements made by the firm to the banks. This testimony is uncontradicted.

On February 3, 1915, the petition was filed against this firm, and on April 12, 1915, the appellee, the First National Bank of Baltimore, which is objecting to the discharge of Mr. Doyle, filed exceptions to the allowance of the claim of Josephine T. Waite, executrix of the estate of John Turnbull, Jr., deceased, in which they claimed that the money left by him in the business is liable for the debts of the bankrupt firm and should not be considered as a loan by the estate to the bankrupts. On April 20, 1915, the bank filed its specifications objecting to the discharge of Doyle upon the ground that the firm of John Turnbull, Jr., & Co. obtained money on credit from them upon a materially false statement in writing made to them for the purpose of obtaining moneys on credit, the alleged false statement being dated January 31, 1914.

It is insisted that the statement that the firm of John Turnbull, Jr., & Co. is false, in that it did not show that they owed the estate of John Turnbull, Jr., the sum of $100,629.48. The appellant was denied his discharge in pursuance of the amendment of 1910 to the Bankruptcy Act of 1898, known as section 14, subsection b, clause 3, wherein it is provided that the court after a hearing shall permit the discharge unless the bankrupt has:

"3. Obtained money or property on credit upon a materially false statement in writing made by him to any person or representative for the purpose of obtaining credit from such person."

Thus it appears that, unless the bankrupt obtained money or property on credit upon a materially false statement in writing made by himself to any person or representative in order to obtain credit from such person, he is entitled to a discharge. It is well settled by the courts that the ground upon which he is denied his discharge is that the statement made is knowingly and intentionally false. The facts in this case, most of which are not in dispute, show very clearly, first, that appellant had no knowledge of the statement in question; and, second, the evidence shows most conclusively that they were not intentionally untrue. This view is sustained by Collier in his work on Bankruptcy (10th Ed.) p. 351, in the following language:

"The creditor alleging this objection must prove that the bankrupt (1) obtained money or property on credit, that he did so on (2) a statement of his financial condition relied on by the creditor that such statement was (3) in writing, that it was (4) materially false, and (5) that it was so made to the creditor or his representative (6) for the purpose of obtaining credit from such creditor. To these should be added the usual elements, that the obtaining of property must have been (7) by the bankrupt or by some one duly authorized by him."

This court in an opinion by Judge Keller, in the case of Frank v. Michigan Paper Company, 179 Fed. 776, 103 C. C. A. 268, 30 L. R. A. (N. S.) 623, said:

"Under the existing statute the question of what will bar a discharge has now been passed upon by at least three * * * Circuit Court of Appeals, and all of these decisions are in substantial harmony in holding that the bar to a discharge by reason of a false statement in writing is confined to such person or persons as actually made such statement with the intention to deceive."

In the case of Gilpin v. Merchants' Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023, Judge Gray in referring to this section said:

" * * * It seems to us clear that the plain language of this third clause of section 14b requires that the * * * statement made by the bankrupt, for the purpose of obtaining credit, etc., should be knowingly and intentionally untrue, in order to constitute a bar to the discharge of the bankrupt. In other words, 'false statement' connotes a guilty scienter on the part of the bankrupt."

Also, in the case of Peck v. Lowenbein, 178 Fed. 178, 101 C. C. A. 498, this court reached the same conclusion. In that case it appears that Lowenbein prepared and signed a statement which was false; but it was shown by the evidence that Owens, his partner, furnished the information from which he prepared the statement. However, it also appeared that Lowenbein knew nothing of the truth or falsity of the statement of facts upon which he prepared his statement. The court in disposing of the case, among other things, said:

"It is the evident purpose of the Bankruptcy Act to protect that unfortunate class of debtors who are unable to pay their debts by giving them a discharge, thus affording them an opportunity to engage in business again, while, on the other hand, it is manifestly intended to deny a discharge to those whose conduct has been such as to show that they obtained credit by false statements calculated and intended to deceive and thereby defraud their creditors. Construing the act with these ends in view, it would be manifestly unjust to deny a discharge to a debtor when it appears, as it does in this instance, that the statement which he made was not actuated by any fraudulent purpose. This finding of fact has been approved by the learned judge who heard the case below, and is within itself conclusive in so far as the question involved in this controversy is concerned."

In the case of Franklin v. Monning Co., 33 Am. Bankr. Rep. 257, 217 Fed. 929, 133 C. C. A. 601, in referring to this phase of the question, the court quotes the definition of the word "false" from Words and Phrases, which is as follows:

" 'False means that which is not true, coupled with a lying intent.' 'False in jurisprudence naturally imports something more than the vernacular sense of "erroneous" or "untrue." ' "

There are other grounds upon which appellant relies, but we do not deem it necessary, in view of what we have said, to discuss the same. It appearing that the statement of December 15, 1914, was not prepared by appellant and that he knew nothing of its contents, and it also appearing that he had no knowledge as to the character of the statement which he signed, we think, in view of the rule as announced in the cases above cited, that the court below erred in refusing to grant a discharge.

For the reasons stated, the decree of the lower court is reversed.