### In re PARKER BROS. & JOHNSON.

(District Court, E. D. North Carolina. March 4, 1922.)

**1. Evidence ⚮10(2), 11—Judicial notice taken of location of town and prosperous conditions.**

It is a matter of common knowledge, of which the court must take notice on objections to a bankrupt's discharge, on the ground that a materially false statement was made for the purpose of obtaining credit, that Dunn, N. C., is in the center of an unusually fine agricultural section, and that the year 1919 and until the latter part of 1920 was of unprecedented prosperity.

**2. Bankruptcy ⚮407(5)—Representation that accounts were good not materially false statement, preventing discharge.**

In view of the unexpected drop in the prices of farm products during the fall months of 1920, a representation in a statement to a commercial agency in July, 1920, that a mercantile firm's accounts receivable were

good, *held* not shown to be a materially false statement, preventing a discharge, under Bankruptcy Act, § 14b (Comp. St. § 9598), because in June, 1921, one-third of the accounts were uncollectible.

3. **Bankrupty** ⊚⟹407(5)—**Statement in financial statement that "accounts are good" construed.**

A representation in a statement given a commercial agency by a mercantile firm doing business in an agricultural section that its accounts receivable were good, when fairly and reasonably construed, was an assertion that, in the opinion of the one making the statement and under present and fairly reasonable conditions, they would be paid as crops were matured and marketed.

4. **Bankruptcy** ⊚⟹407(5)—**Representation as to partner's real estate, which was subject to dower, held not materially false statement.**

A representation in a statement given a commercial agency by a mercantile firm that real estate worth $30,000 stood of record in the name of a partner, who took no part in conducting the business, and who was not individually adjudicated bankrupt, *held* not a materially false statement, within Bankruptcy Act, § 14b (Comp. St. § 9598), where the partners making the statement did not know that dower had been alloted in such land to the owner's mother.

5. **Bankruptcy** ⊚⟹407(5)—**Partners making statement to mercantile agency not charged with knowledge of dower to which another partner's real estate subject.**

Partners including in a statement of the assets of the firm made to a commercial agency real estate owned by another partner, who took no part in conducting the business, were not charged with notice that dower had been allotted to the other partner's mother, though it was a matter of record, where they never had occasion to examine the record.

6. **Bankruptcy** ⊚⟹407(5)—**Statement known to be untrue, or made without reasonable cause to believe it to be true, not basis of charge of intent to defraud.**

One who makes a statement as a fact which he knows to be untrue, or which he has no reasonable cause to believe to be true, knowing that the person to whom it is made will act on it to his detriment, is liable for such damage as such person sustains by acting on it; but this principle is confined to legal liability, and cannot be made the basis of a charge of making a false statement with intent to defraud, under Bankruptcy Act, § 14b (Comp. St. § 9598).

In Bankruptcy. Involuntary bankruptcy proceeding against Parker Bros. & Johnson, bankrupts. On petition for discharge and objection by creditors. Discharge granted.

Clifford & Townsend, of Dunn, N. C., for petitioners.
Wright & Stevens, of Wilmington, N. C., for creditors.

CONNOR, District Judge. The petitioners, O. C. Parker, A. C. Parker, and Jasper C. Johnson, were on and prior to July 12, 1920, copartners, engaged in a general mercantile business in the town of Dunn, Harnett county, N. C., under the firm name and style of Parker Bros. & Johnson. On June 1, 1921, the partnership and O. C. Parker and A. C. Parker individually were, upon the petition of creditors in an involuntary proceeding, adjudged bankrupt. The petition as to Joseph C. Johnson was dismissed, because it was found upon the hearing that he was engaged chiefly in farming. A trustee was appointed, and the estate of the partnership and the individual partners, other than J. C. Johnson, were duly administered. On August 26, 1921, the bankrupts

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

filed their petition for discharge in accordance with the provisions of the Bankruptcy Act. The petition was set for hearing, and notice given by publication and by mailing copy to each creditor, all of which appears of record.

On the day set for the hearing, October 3, 1921, S. & B. Soloman and the Remarkable Waist Company, creditors of said bankrupt, duly entered appearance and filed objections to the granting of the discharge, and later filed specifications setting forth the grounds of each objection, to wit:

"Said bankrupt, through the defendant A. C. Parker, obtained credit and goods from said creditors upon a materially false statement in writing made by them through A. C. Parker, for the purpose of obtaining credit, said statement being given to R. G. Dun & Co., a commercial agency, on or about July 12, 1920."

The statement was made and signed "Parker Bros. & Johnson, by A. C. Parker," and contained the following:

### Assets.

| | |
|---|---|
| Merchandise | $25,000.00 |
| Accounts receivable, good | 15,000.00 |
| Fixtures | 500.00 |
| Other real estate | 10,000.00 |
| | $70,500.00 |

### Liabilities.

| | | |
|---|---|---|
| Open account for merchandise | $17,000.00 | |
| Others for borrowed money | 10,000.00 | $27,000.00 |
| Net worth | | $43,500.00 |

This statement was made upon estimated values as a basis for credit and communicated to S. & B. Soloman, subscribers to the R. G. Dun & Co. Agency, credit extended, and goods sold by them upon the faith of said statement, upon which there is a balance due of $1,181. The specifications filed, after setting out the statement, alleged that—

"In truth and fact the assets were grossly overvalued, and particularly the item of real estate, which was practically of no value."

Upon the hearing the Remarkable Waist Company did not appear or introduce evidence. S. & B. Soloman attacked the items in the statement of the assets, the accounts receivable, and the real estate.

In regard to the accounts receivable, no evidence was offered denying the amount of them, but it was insisted that the estimated value was "grossly exaggerated." The statement was made July 12, 1920, being midsummer. The evidence showed that O. C. and A. C. Parker, the active and managing partners, were young men, 26 and 28 years of age, respectively; that the younger member had been in the military service in Europe during the war. Neither of them had much experience in mercantile business. The other member, Jasper C. Johnson, was the uncle of the other two, resided on his farm in Johnson county, seven miles from Dunn. He owned, as hereinafter set forth, a tract of land upon which he resided and cultivated.

During the month of December, 1919, they formed the partnership

and began business by buying a stock of merchandise from a party engaged in business in Dunn, N. C., for $7,500. They borrowed, largely on the credit of J. C. Johnson, the others having but little estate, from a bank $10,000, out of which they paid for the stock and invested the balance in the business.

[1] It is a matter of common knowledge, of which the court cannot, without doing injustice to the bankrupts, fail to take notice that the town of Dunn, N. C., is in the center of an unusually fine agricultural section, in which large crops of cotton and tobacco were produced. The year 1919, and until the latter part of 1920, was of unprecedented prosperity. The lands yielded excellent crops, and the price of cotton and tobacco was in excess of any former period. Business of all kinds was prosperous. Lands soared to unprecedented prices, as did all kinds of personal property. Merchants bought large stocks of goods to meet the demands of the trade. The year 1920 opened with bright prospects for continued prosperity. The respondents, as did all other merchants, bought goods in large quantities at high prices. Credit was abundant and cheap. Under these conditions respondents, it is not denied, had on hand, July 12, 1920, merchandise estimated at $25,000, and had sold to their customers on credit goods amounting to $15,000. They were indebted for the money borrowed $10,000, and accounts due for merchandise $17,000, making $27,000, giving them net business assets of $13,000, putting aside for the present the real estate.

[2, 3] The objecting creditors do not question the truth of the statement in regard to the stock of merchandise, or the amount of the accounts, nor the amount of the indebtedness. The issue raised by the specifications refers, therefore, to the estimated value of the accounts. The adjudication was made June 1, 1921, nearly 12 months after the statement. The trustee, who was the only witness examined in regard to the value of the accounts, as found on the books of the bankrupts, testifies that about $10,000 of the accounts of July 12, 1920, were "good." Thus the charge that the statement as to these accounts was false at the time it was made is dependent upon the question whether the estimate made by A. C. Parker, July 12, 1920, that they were "good," is shown to be false because approximately one-third in amount were, on June 1, 1921, uncollectible.

Taken most strongly against the bankrupts, the statement as testified by A. C. Parker, as he told the representative of R. G. Dun & Co., was an "estimate." It could not have been otherwise. It is a fact, in respect to which all men living in Eastern North Carolina are aware, shown by the records of this and other courts, that during the month of July, 1920, accounts against farmers, based upon the price of cotton and tobacco at that time and during the years 1919 and 1920, for goods, merchandise, and supplies sold to farmers, were generally regarded as "good." At that time, and during the summer of 1919 and 1920, cotton sold at and above 30 cents a pound and tobacco averaged 50 cents. All farm products were on the same plane of value. The drop in prices during the fall months of 1920 was as unexpected to the average farmer and merchant as it was unprecedented. The cost of

making the crop, by reason of the high cost of labor and supplies, was very large.

Under these well-known general conditions, any fair-minded, reasonable merchant in Eastern North Carolina would have estimated his accounts on July 12, 1920, as "good and collectible." The opinion of the trustee, based upon the outcome of the conditions existing during the summer of 1921, that A. C. Parker overestimated their value, would be unsafe to predicate a finding that such statement was "grossly" false within the meaning of the Bankruptcy Law. To show, on June 7, 1921, that, in the opinion of the trustee, one-third of accounts, amounting to $15,000 on July 12, 1920, in the light of the almost revolutionary change in the financial condition of the farmers and others in the section in which the bankrupts did business within that period, are at the last date uncollectible, falls short of showing, as the objecting creditor must do, to bar the petition for a discharge, that the statement of July 12, 1920, was materially false. At most, the statement, given a fair and reasonable construction, was an assertion that the amount due from customers, generally farmers, were, in the opinion of the partner making the statement, "good"; that is, that under present and fairly reasonable conditions they would be paid when the crops were matured and marketed. The records of this court during the past year disclose the financial ruin of merchants and others who, on July 12, 1920, regarded themselves, and were regarded by others, as amply solvent, having frequently considerable surplus estate after meeting their obligations. It is well known that hundreds, if not thousands, of industrious, intelligent farmers in Eastern North Carolina lost by the decline in the price of staple crops, not only their year's labor, but their entire estates. To deny such men the relief afforded by the Bankruptcy Law, upon charges of making materially false statements in estimating the value of their property on July 1, 1920, would work injustice and wrong.

[4] Passing to the next specification urged against granting the discharge, the uncontradicted evidence shows that in the statement referred to A. C. Parker listed, "Other real estate, $30,000," and in a memorandum at the end of the statement directed the agent to write:

"Other real estate given in statement stands of record in name of J. C. Johnson, located in Johnson county, North Carolina."

J. C. Johnson was a partner, but took no part in conducting the business, living upon and cultivating his farm of 131 acres some 15 miles distant from Dunn. He knew nothing of the statement or its contents. The facts in regard to this real estate are:

The tract of land owned by J. C. Johnson was owned by his father, A. D. Johnson, who died prior to 1892, leaving a widow and three sons, J. C. Johnson, John P. Johnson, and Nathan M. Johnson, and Mrs. Parker, the mother of O. C. and A. C. Parker. Dower was allotted to his widow, September 10, 1892, and the land covered by the dower partitioned, allotting to the three sons, including the home place and dwelling, 131 acres. The widow lived upon and cultivated the land, until J. C. Johnson reached his majority in 1910, when she sold her personal property and ceased the cultivation of the land.

On January 24, 1910, J. C. Johnson, who lived with his mother, bought the share allotted to John P. Johnson, and, on 25th of June, 1921, he bought the share allotted to Nathan M. Johnson. The deeds were duly recorded in Johnson county. He also bought a tract of 21 acres, not covered by the dower. After the widow sold her personal property, J. C. Johnson cultivated the land, using it as his own; his mother making her home with him, spending part of her time with her other children. At the date of the allotment of dower the respondent A. C. Parker was an infant and O. C. Parker born 3 years thereafter. Their mother sold her interest in the land and moved some distance away. The widow of A. D. Johnson is now 68 years of age. The father of the bankrupts died while they were boys. They both swear that they did not know, and until 1921 had never heard, that a dower had been allotted to their grandmother, or that she had or owned any interest in the land. They thought that the title was in J. C. Johnson. There is no evidence tending to show that their grandmother received rent, or asserted any claim to the land, after she sold her personal property and J. C. Johnson became of age.

[5, 6] It is urged as a ground for refusing the discharge that the statement in regard to the ownership of the land by J. C. Johnson was materially false. Counsel contend that the bankrupts are fixed with notice of the fact that dower was allotted to their grandmother in 1892, because it is a matter of record. This would be true, as affecting the title, if they had purchased the land, as J. C. Johnson did. There is no evidence, however, that either of the bankrupt partners, at any time, had any occasion to examine the record. If J. C. Johnson had been adjudged bankrupt individually, it may be that the statement made by his partner in regard to the title would bind him; but he is not a party to this proceeding. His liability for the partnership debts is not affected by the result of this litigation. It is true, as contended by the objecting creditors, that if one makes a statement as a fact which he knows to be untrue, or which he has no reasonable cause to believe to be true, and he knows that the person to whom such statement is made will act upon the statement to his detriment, he becomes liable for such damage as such person sustains by reason of acting upon such statement. This is elementary, not necessarily as fraudulent, but rather as an assumption of liability for the truth of the statement. This principle, however, is confined to legal liability. It cannot be made the basis of a charge of making a false statement with intent to defraud. As said by Judge Gray in Gilpin v. Merchants' Nat. Bank (C. C. A. 3d Cir.) 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023:

"It seems to us clear that the plain language of this third clause of section 14b requires that the written statement made by the bankrupt, for the purpose of obtaining credit, * * * should be knowingly and intentionally untrue, in order to constitute a bar to the discharge of the bankrupt. In other words, 'false statement' connotes a guilty scienter on the part of the bankrupt. This primary and ordinary meaning of the word 'false' cannot be ignored. * * * Webster gives as its primary meaning: 'Uttering falsehood'; 'unveracious'; 'given to deceit'; 'dishonest.' * * * To charge a person with making a false statement, is equivalent to charging him with uttering a falsehood, and imputes moral delinquency to the person so charged. * * * In Black's Law Dictionary, under the title 'False,' it is said: 'In law, this word means

something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud.'"

See Words and Phrases, First and Second Series, False.

This definition, as applied to the term "false statement," as used in Bankruptcy Act, § 14b (Comp. St. § 9598), has been approved by the Circuit Court of Appeals of this circuit in Peck v. Lowenbein, 178 Fed. 178, 101 C. C. A. 498, and Doyle v. Bank, 231 Fed. 649, 145 C. C. A. 535. In the last case Judge Pritchard says:

"It is well settled by the courts that the ground upon which he [the bankrupt] is denied his discharge is that the statement made is knowingly and intentionally false."

In Re Cloutier Bros. (D. C.) 228 Fed. 569, Hale, District Judge, says:

"To bar a discharge, the * * * statement must * * * be false; it must be willful or intentionally misleading."

The bankrupts were examined orally before me. I was impressed with their sincerity and purpose to say the truth. Their explanation of their relation to the land, the family, the situation, impresses my mind with the truth of what they say. Putting one's self in their position during their childhood, youth, and opportunities, I do not doubt that they were ignorant of the fact that their grandmother had a dower in the land. The statement as made is true; the real estate does "stand of record in name of J. C. Johnson, located in Johnson county, North Carolina." This is doubtless the language of the agent who wrote the answers upon the blank slip upon which the entire "statement" is made. It is not denied that J. C. Johnson had been, a short time before the statement was made offered $30,000 for the land, which, in view of the prices at which farming lands at that time were being sold, is not unreasonable.

Upon a careful consideration of the evidence before me, I am unable to find that the bankrupts made a materially false statement for the purpose of obtaining credit, within the meaning of the Bankruptcy Act (Comp. St. §§ 9585–9656). The record discloses one of many of the cases in which men of little experience and business capacity were allured, by the conditions following the Great War, into business ventures beyond their capacity and capital, and were overtaken by the world-wide conditions, the cause of which is now and will for a generation be a subject of discord and dissension between those who undertook to deal with the aftermath of a World War, which under any guidance were probably inevitable, and from which it will require long years to recover.

Let the certificate of discharge issue.