In re Calvin Brent JONES, Debtor.

FIRST AND MERCHANTS NATIONAL BANK OF RADFORD, Plaintiff,

v.

Calvin Brent JONES

and

Byron R. Shankman, Counsel for Debtor

and

Franklin P. Pulley, III, Trustee, Defendants.

Bankruptcy No. 7–79–00820

Adversary Proceeding No. 7–79–0004.

United States Bankruptcy Court, W. D. Virginia, Roanoke Division.

Feb. 21, 1980.

Byron R. Shankman, Pulaski, Va., for debtor-defendant.

Jerry K. Jebo, Jebo & Rosenthal, Radford, Va., for plaintiff.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

Plaintiff, First and Merchants National Bank of Radford (Bank), filed a Complaint herein against the Defendant, Calvin Brent Jones (Jones), seeking a determination of the dischargeability of its debt in the sum of $4,100.38. The grounds alleged in support of the Complaint being that the Defendant, Jones, obtained money by fraud and false pretenses, pursuant to § 11 U.S.C. § 523(a)(2).[1]

1. 11 U.S.C. § 523(a)(2) "for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;  or (B) use of a statement in writing—(i) that is materially false;  (ii) respecting the debtor's or an insider's financial

The facts appearing from the evidence generally is as follows: the Defendant, Jones, first obtained a loan from the Bank on August 26, 1977, with an initial loan of $1,700.00 together with interest and other charges resulting in a total balance due of $2,635.42. The Defendant executed a loan application form which the Bank uses for such purposes upon which certain personal information was set forth at the bottom of which, in a space provided for the listing of debts owed by the applicant, there was set forth a loan due United Virginia Bank—Lynchburg—auto loan, with no amount specified, F & M—with no amount, Am Cr?—$250.00, Master Charge—$250.00; that when the initial loan was obtained, Jones' credit rating was established and confirmed by a check with the local credit bureau, which the Bank obtained in addition to its records concerning the application.

Thereafter, the Defendant maintained a satisfactory credit rating as a customer of the Plaintiff. On April 3, 1979, the Defendant obtained from the Bank a loan of $500.00, executing another loan application upon the identical form as that used initially on August 26, 1977. An examination of this form reflects that the space provided for the listing of debts owed by the Defendant was left entirely blank. The only information listed thereupon was that of up-dating personal information such as Defendant's address, phone number, employment and salary.

Thereafter, on June 1, 1979, the Debtor obtained another loan from the Bank in the amount of $1,000.00, executing still another loan application upon a similar form upon the face of which in the space provided for listing debts owed by the Debtor was, likewise left completely blank. The fragmentary information listed upon said application form consisted solely of an up-dating as to address, employment, salary and telephone number, with a notation that the purpose of the loan was for refinancing of a current loan with the advancement of new money in the amount of $485.00.

Shortly thereafter, on April 16, 1979, the Defendant appeared and co-signed a note for his step-brother in the amount of $1,719.84. The evidence indicated that the Defendant's credit standing with the Bank on this date was such that the Bank was willing to accept the Defendant as a co-maker upon the loan of the step-brother, who apparently had not theretofore been a customer of the Bank, and whose credit rating was unknown to the Bank.

Shortly thereafter, and unfortunately for all concerned, on June 29, 1979, the step-brother had absconded, was of course, not making payments, at which time the Defendant visited the Bank with the unpleasant news. Thereupon, the loan of the step-brother, as well as the current loan balance of the Defendant was refinanced in the amount of $4,100.00, at which time still another of the loan applications was executed by the Defendant. Upon this loan application, as was true with the others, except the first one, in the space for listing of debts, it was entirely blank. This application form, likewise, appeared to contain only an up-dating of pertinent personal information as to address, phone number, employment and salary. The foregoing loan application forms were introduced into evidence as Plaintiff's Exhibits 1, 2, 3 and 4 in their chronological order.

The evidence further showed that at the time of the execution of the loan applications following the first one in question, the Defendant did, in fact, owe additional debts including, of course, the indebtedness owing to the Plaintiff. The Defendant testified generally as to the signing and executing the loan applications, each of which were apparently routinely handled in the renewals other than the first one; that he in fact, had other debts owing at the times when the loan applications were executed, and that the applications were executed in the presence of the Bank Official without any

condition; (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied;

and (iv) that the debtor caused to be made or published with intent to deceive;"

discussions whatsoever as to what other debts the Defendant owed at the times in question; that the last application upon which the Complaint herein is predicated took a very brief period of time, and was solely for the purpose of consolidating the Debtor's present loan and the step-brother's loan into one obligation; that the payments were made upon the consolidated loan until the Defendant's work at his place of employment was reduced, making it impossible for the Defendant to make the payments thereon, resulting ultimately in the Defendant's petition for relief, which was filed in this Court on October 5, 1979.

It is the loan application used in the consolidation that the Bank claims was fraudulent in that the Defendant failed to list all his debts thereon.

The established law relating to dischargeability of debts under the Bankruptcy Act of 1938, § 17a(2) [11 U.S.C. § 35(a)(2)] has, for the most part, been incorporated as to such cases in 11 U.S.C. § 523(a)(2). The revision notes reflect that essentially only in two instances are changes made. The first change in 11 U.S.C. § 523 includes the additional wording "actual fraud". The second instance which is material here, includes the wording that the creditor "reasonably relied" upon the alleged written statement. Accordingly, the existing case law construing § 17 of the Act of 1938 is applicable to and should be followed in the resolution of dischargeability questions under the Bankruptcy Reform Act of 1978, 11 U.S.C. § 523.

■ The elements required to be found must include each of the following: that a false representation was made, in writing for the purpose of obtaining money or property, etc., which was "reasonably relied" upon by the creditor to its detriment. The element in question here is essentially the question of the Defendant's "intent" to make a false and fraudulent statement which was "reasonably relied" upon by the Bank.

The burden of proof is upon the Plaintiff to prove each element as provided under *Rule* 407, *Rules of Bankruptcy Procedure,* which states:

"At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection."

■ The fraud defined as "actual fraud" in the statute is that fraud must be proved by clear, cogent and convincing evidence. Fraud is never presumed. It has always been fundamental that the conduct of mankind is presumed to be upright and those who allege to the contrary have the burden of strict proof as to every essential allegation. *See Sweet v. Ritter Finance Company,* 263 F.Supp. 540 (D.C.Va.1967) wherein the District Court quoting from *Gleason v. Thaw* set out the necessary elements as follows:

"Not only does Ritter Finance have the burden of proof, but it is also faced with the rule that all exceptions set forth in § 17(a)(2) are to be strictly construed. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). Ritter Finance must prove actual fraud before it can show Sweet's debt to be nondischargeable under § 17(a)(2). In other words, Ritter Finance must show by a preponderance of the evidence that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *Sweet v. Ritter Finance Company,* 263 F.Supp. 540, 543 (D.C.Va. 1967).

"The frauds included in the portion of clause (2) under discussion are those which in fact involve moral turpitude or intentional wrong; fraud implied in law, which may exist without imputation of bad faith or immorality, is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made, and that they were relied upon by the other party." 1A Collier on Bankruptcy, 14th Ed., ¶ 17.16, p. 1634, *et seq.*

This has long been the rule of construction in the Fourth Judicial Circuit. Under the earlier law, obtaining money in reliance upon a materially false statement in writing was under § 14 nondischargeable and the word "false" as there used the court stated:

" * * *, unless the bankrupt obtained money or property on credit upon a materially false statement in writing, made by himself to any person or representative in order to obtain credit from such person, he is entitled to a discharge. It is well settled by the courts that the ground upon which he is denied his discharge is that the statement made is knowingly and intentionally false." *Doyle v. First Nat. Bank of Baltimore*, 231 F. 649, 652 (1916 C.A. 4)

In an earlier opinion, this Court of Appeals stated:

"The bar to a discharge by reason of a false statement in writing is confined to such person or persons as actually made such statement with the intention to deceive." *Frank v. Michigan Paper Co.*, 179 F. 776 (1910 C.A. 4). To same effect, see opinion *Peck v. Lowenbein*, 178 F. 178, 181 (1910 C.A. 4)

The statutory requirement for proof of actual fraud is essential to effectuate the beneficent policy of the Act for the debtor as intended by Congress.

"Here, . . ., some evidence of fraud was introduced. However, in weighing the facts put forward in a contest over a discharge, the Court must bear in mind the beneficial policy allowing the honest debtor to get a fresh start in life. Consequently, § 17 of the Bankruptcy Act will be construed strictly against creditors' objections and liberally in favor of the bankrupt." *In re Knight*, 421 F.Supp. 1387, 1391 (1976 D.C.La.); *In re Dolnick*, 374 F.Supp. 84, 90 (1974 D.C.Ill.).

In weighing the evidence in this case, the Court must be cautious as to the admonition of the Fourth Circuit Court of Appeals in *Bennett v. W. T. Grant Company* (4th Cir. 1973) 481 F.2d 664, wherein the Court states that equitable principles governs

cases of this nature, and accordingly, the evidence must be viewed not only from the conduct and circumstances of the Defendant, but likewise, it must be viewed from the standpoint of the Plaintiff. This takes on added significance when viewing the facts relating to the question of "reasonable reliance" by the creditor upon the alleged false statement.

■ In applying the foregoing rules of law to the facts presented in this case, the Court finds it difficult when viewing all the facts and circumstances to find that degree of reliance contemplated by the statute. The Plaintiff contends that the loan application (Exhibit 4) executed when the loans were consolidated, was false and misleading because it did not contain the listing of the Defendant's debts owed to third parties at that time. Only the first loan application recited any trace of a listing of debts by the Debtor. It was this initial transaction which the Bank appeared to concern itself with so far as the credit rating of the Defendant was concerned. The execution of the loan applications following the first one were obviously perfunctorily completed for the record. The Defendant's credit rating was established to the point where he was accepted as a collateral endorsement for the step-brother. The Court is compelled to view these facts and circumstances in such fashion that a finding therefrom that the conduct was such as to amount to actual fraud relied upon by the Bank to be totally unrealistic.

According, it is ADJUDGED AND ORDERED that the allegations of the Complaint not having been sustained, the same is accordingly dismissed and the debt discharged.