**In re David Charles KIRBY and Gail Kirby, his wife, Debtors.**

**EASTERN AIRLINES EMPLOYEES FEDERAL CREDIT UNION, Plaintiff,**

v.

**David Charles KIRBY and Gail Kirby, his wife, Defendants.**

**Bankruptcy No. 80–00776–BKC–JAG. Adv. No. 80–0269–JAG–A.**

United States Bankruptcy Court, S. D. Florida.

Feb. 11, 1981.

Paul D. Breitner, Miami, Fla., for plaintiff.

Pamela Weiss, Miami Beach, Fla., for debtors-defendants.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding was tried before the court on December 3, 1980 upon the three-count complaint of the plaintiff, Eastern Airlines Employees Federal Credit Union. The complaint itself refers only to nondischargeability of the three separate obligations in the three counts of the complaint. However, in its memorandum of law filed post trial, the plaintiff also objects to the discharge of the defendant-debtors under a "disappearance or shortage of assets" theory which could barely be inferred from the complaint if at all. Plaintiff's complaint refers to 11 U.S.C. § 727 in discussing nondischargeability of debts. However, at trial, plaintiff conceded that the nondischargeability of debt aspects were, in fact, tried under 11 U.S.C. § 523(a)(2)(B). As aforesaid, plaintiff renewed its reference to 11 U.S.C. § 727(a)(5) in its memorandum of law on the theory that the debtors were not entitled to discharge.

Each of the obligations of the defendant-debtors to the plaintiff was as a result of a separate transaction. Count I refers to a loan obtained by the debtor, Gail Kirby on March 4, 1980 in the amount of $1,500 (Plaintiff's Exhibit No. 1). This brought a previously existing indebtedness in the amount of $1,336 up to $2,836.

Defendant Gail Kirby's stated purpose for the new funds was for "closing costs" in the purchase of a residence. On March 9, 1980, the defendant-debtors did in fact enter into a purchase agreement for a house (Plaintiff's Exhibit No. 5) which recited that a $300 deposit had been made prior to that time and $1,700 was being additionally deposited at that time. The agreement further required that an additional $4,100 would be paid at time of closing which was estimated to be in June or July, 1980.

The defendants were relying on settlement funds from other matters to generate the needed cash at closing. However, it became apparent prior to the closing date that those funds would not be available and that the defendant-debtors would not be able to close on the purchase of the residence. They so informed the seller under the purchase agreement and were refunded their deposit. Instead of repaying any part of their loan to the plaintiff, the defendants utilized the refund of that deposit to pay other bills and to meet current expenses.

In Count I, the plaintiff complains that since these funds were earmarked as "closing costs", they should have been returned to the plaintiff and the loan cancelled as soon as the debtors knew they could not go forward with the purchase of the home and had their deposit refunded to them. In addition, in and by Count I, the plaintiff alleges that the application for the additional loan was made and the funds obtained when the defendant, Gail Kirby, was insolvent and that she failed to disclose that fact to the plaintiff. Plaintiff also seeks to make a point of the fact that at the time of the advance of the additional $1,500 the real purpose was to complete the deposit on the purchase agreement and not for closing costs as stated on the application.

Technically, the making of a loan at a time that the borrower is insolvent does not make that obligation nondischargeable under any sub-section of 11 U.S.C. § 523. However, the thrust of the plaintiff's contention in that regard is that the defendant, Gail Kirby, did not disclose all of her obligations on the application for the new loan, which failure would except the debt from discharge under 11 U.S.C. § 523(a)(2)(B). The defendant, Gail Kirby, testified that the necessity for a detailed listing of prior obligations was discounted by the agents of the plaintiff who processed her application. (The evidence on this as to Count I and Count II will be discussed in greater detail below.) She also testified that she was under the impression that practically all, if not all, of the previous obligations were those of her husband, the defendant, David Charles Kirby.

In Count II, the plaintiff is seeking to have an obligation created on September 13, 1979 declared to be excepted from discharge. The proceeds from that loan in the total amount of $4,770.98 were used to pay a $2,470.98 balance on an automobile and to generate $2,300 in cash funds to the borrower, the defendant-debtor, David C. Kirby. The application and loan information on this obligation is set forth in Plaintiff's Exhibit No. 2.

David C. Kirby testified that when making the application he told the employee of the plaintiff who took it that he could not remember all of his debts and did not have the details with him. According to David Kirby, that agent of the plaintiff told him to just put down what he could remember and that it was not necessary for him to bring in any additional information the next day as Kirby volunteered to do. The Kirbys do not deny that they did, in fact, owe the amounts alleged by the plaintiff in its complaint at the time of the loan applications.

A witness, Ed Calcagnon, also testified on behalf of the defendants. He is an Eastern Airlines employee who has borrowed fifteen to twenty times from the plaintiff. He confirmed that on many of the occasions, he was told by agents of the plaintiff in taking applications for loans not to worry about listing his other obligations and at least half of the time that he succeeded in getting loans. The loan officers knew of the omissions in his applications and approved the loans notwithstanding. The testimony of the defendants and their witness indicate that the plaintiff did not particularly care whether or not an applicant for loan was completely disclosive of his other obligations on the loan application. This testimony was completely unrebutted by the plaintiff. The plaintiff relied solely on the documents which were admitted into evidence without any other testimony.

In Count III, plaintiff contends that the defendant, David C. Kirby, applied to it for a MasterCharge account through an application and agreement in that regard (Plain-

tiff's Exhibit No. 3) which was violated by the defendant exceeding the $1,000 limit and continuing to use the card after its termination and after the filing of the chapter 7 petition by the defendants on June 26, 1980. The agreement reflects a limit of $1,000 having been inserted by the plaintiff and there is no evidence to show when that insertion was made. The $1,000 limitation is written below the defendant's signature and below a space marked "credit union use only".

The defendants testified that they knew that the MasterCharge account had been terminated only when they attempted to use it and the merchant told them that the card was on a list of unuseable cards. The defendants further testified that they were under the impression that they could continue using the card as long as they made the monthly minimum payments. There is no evidence that they had ever received actual termination notice or that they incurred any further charges after knowing that the card had been put on an unuseable list. The plaintiff offered no evidence of the amount of any charges after the filing of the chapter 7 petition. The debtors listed the MasterCharge account as $2,000 in their schedule A–3 in the main proceeding, Case No. 80–00776–BKC–JAG.

The court has carefully considered the evidence and the applicable law as furnished to it in the memoranda filed by the parties and its own research and concludes that the plaintiff has failed to establish any basis upon which this court can hold any of the three obligations to be excepted from discharge under 11 U.S.C. § 523 or deny a discharge to the defendants or either of them under 11 U.S.C. § 727.

■ As to the assertion that the failure to list all of the obligations on the loan applications referred to in Counts I and II should cause those obligations to be excepted from discharge, the court finds that the plaintiff has failed to establish any basis therefor under 11 U.S.C. § 523. Under § 523(a)(2)(B)(iii), the creditor must reasonably rely upon any statement in writing that is materially false. Even assuming that the loan applications referred to in Counts I and II were materially false, there is absolutely no evidence that the plaintiff relied upon those statements. Most of the evidence is to the contrary in that all of the witnesses testified that it was customary for the plaintiff to make loans upon applications which were known to it not to include the borrower's entire financial picture. As a matter of fact, the unrefuted testimony was that the debtors were encouraged not to fret or worry over any exclusion of information on the applications.

■ Likewise, the failure to repay the loan referred to in Count I after the purchase of the residence was abandoned and the deposit money refunded to the defendants does not cause that obligation to be excepted from discharge or discharge to be denied to the defendants. The court cannot agree that the explanation given by the defendants that the refund was spent for current bills and other obligations is totally unreasonable. There is no evidence to indicate that the defendants had any of this money and failed to include it in their bankruptcy schedules. It does not stretch the imagination of the court to conclude that the sum of $2,000 could easily have been dissipated in such a manner from the time it was returned to the defendants shortly after March 9, 1980 and June 26, 1980 under the financial circumstances of this family with the cost of living that prevailed at that time. The evidence clearly shows that the proceeds of the loan referred to in Count I were used to complete the deposit on the purchase agreement for the new home even though it was referred to as "closing costs" on the loan application rather than "deposit on purchase". There is nothing to render that obligation nondischargeable by reason of the debtor's failure to repay that loan when its ultimate purpose was frustrated, which frustration occurred after the loan was completed. See *In re Mixed Bag et al.*, 21 C.B.C. 342 (D.C.Vt.1979).

■ The fact that the debtors exceeded their credit limit on the MasterCharge account and continued to use the account

after that limit was exceeded does not form any basis for excepting the obligation from discharge or denying debtors the relief of discharge. Most creditors who come to us are overextended in their obligations and have exceeded the limits under which they can repay their obligations. The only part of the debt discharged however, is that which existed on the date of filing of the chapter 7 petition in Case No. 80–00776–BKC–JAG on June 26, 1980 at which time the order for relief was entered. 11 U.S.C. § 727(b). The debtors' schedules reflect that obligation to be $2,000 at that time. There is no contradictory evidence before the court as to the amount of the indebtedness at that time.

Therefore, all of the relief sought by the plaintiff either as to excepting any of the three obligations referred to in its complaint from discharge or denying discharge to the defendants or either of them is denied. As required by Bankruptcy Rule 921(a), a separate judgment consistent herewith is being entered this date.