In re Joseph A. CIAMPI, Debtor.

**WATERBURY CONNECTICUT TEACHERS FEDERAL CREDIT UNION, Plaintiff,**

v.

**Joseph A. CIAMPI, Defendant.**

Bankruptcy No. 205–5–81–00582.
Adv. No. 205–5–81–0215.

United States Bankruptcy Court,
D. Connecticut.

Oct. 2, 1981.

Alvin Rosenbaum, Waterbury, Conn., for plaintiff.

John C. Kucej, Waterbury, Conn., for defendant.

## MEMORANDUM OF OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT 11 U.S.C. § 523(a)(2)(B)

ALAN H. W. SHIFF, Bankruptcy Judge.

### I

### Background and Findings

The plaintiff in this adversary proceeding seeks the determination that a debt of the defendant is non-dischargeable under 11 U.S.C. § 523(a)(2)(B).[1]

---

1. 11 U.S.C. § 523(a)(2)(B)

"A discharge under 727 ... of this title does not discharge an individual debtor from any debt—(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
  (B) Use of a statement in writing—

After analyzing the evidence adduced at the trial and assessing the credibility of the witnesses, the court finds the facts of record as follows:

1. On April 24, 1981, the defendant, a teacher in the Waterbury, Connecticut public school system, sought a loan in the amount of $5,000.00 from the plaintiff.

2. The plaintiff's lending policy at that time required the endorsement of a co-maker on any loan in excess of $2,500.00.

3. The defendant's April 24, 1981 credit application included a reference to Paul Cipriano as a co-maker. The application also requested the defendant to list credit references and outstanding obligations as to which the defendant wrote "0".

4. Credit applications were generally treated informally by the plaintiff with primary reliance upon the "credit worthiness" of co-makers on applications for loans in excess of $2,500.00.

5. The plaintiff's loan officer knew the proposed co-maker, Paul Cipriano, and was well satisfied with his "fine credit record".

6. The defendant's credit application was approved, he borrowed $5,000.00 from the plaintiff on April 24, 1981, and he repaid that loan in full on or about May 14, 1981.

7. On May 18, 1981 the defendant applied to the plaintiff for a loan in the amount of $2,500.00. In his credit application, the defendant listed a home mortgage as an outstanding obligation. No other obligations were disclosed by the defendant.

8. The defendant was told he need only list any "large" outstanding debts, but "large" was not defined by the plaintiff's loan officer. The defendant had outstanding obligations in addition to the mortgage at the time he submitted the May 18, 1981 credit application but no evidence was offered by either side as to the amount of any

(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the debtor to whom the debt is liable for obtaining such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

obligation or whether any obligations should reasonably be construed as "large".

9. The defendant's May 18, 1981 application was approved, and he was loaned $2,500.00 on the same day because he had proven his credit worthiness by repaying the April 24, 1981 loan.

10. The defendant did not make any payments on the May 18, 1981 loan which is the basis of the debt sought to be determined nondischargeable by the plaintiff in this proceeding.

## II

### Conclusion

■ The plaintiff had the burden of proving each element of code section 523(a)(2)(B).[2] In an attempt to do so, the plaintiff alleged that although its credit application called for the disclosure of all outstanding obligations, the application submitted by the defendant failed to disclose a number of creditors to whom he was substantially indebted and, consequently, misrepresented his financial condition. The plaintiff's claim lacks merit.

### A.

### *Materially False*

■ In the first place, the plaintiff varied the required content of its credit application by the conduct of its loan officer who specifically told the defendant that he need only list "large" outstanding obligations. While there was evidence that the defendant had other outstanding obligations at that time, there was no evidence of what constituted "large" obligations or whether the defendant had any obligations which should reasonably have been classified as "large" obligations. Thus, there was no evidence that the defendant's credit appli-

2. Rule 407, Rules of Bankruptcy Procedure.

At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving facts essential to his objection.

cation, as modified by the plaintiff, misrepresented the defendant's financial condition or was false and misleading, as claimed by the plaintiff.

### B.

### Reasonable Reliance

 The plaintiff was also required to prove that it reasonably relied upon the information contained in the defendant's credit application. However, the loan officer's instruction to the defendant to include only "large" obligations on his credit application undermines not only its claim of misrepresentation but also its claim that it reasonably relied upon the defendant's response. See In re Kirby, 8 B.R. 705, 708 (Bkrtcy.S.D.Fla.1981).[3] Moreover, the testimony of plaintiff's loan officer makes it abundantly clear that credit was not extended on the basis of the credit application but solely on the defendant's repayment of a previous loan. The court in In re Jones, 3 B.R. 410, 6 B.C.D. 68 (Bkrtcy.W.D.Va.1980), considering a similar fact pattern, concluded that there was insufficient evidence of reasonable reliance where the debtor failed to list all outstanding debts on a credit application but it appeared that credit was extended on the basis of previous applications.

### C.

### Intent to Deceive

Finally, the plaintiff neither claimed nor offered any evidence whatsoever that the defendant intended to deceive the plaintiff by his credit application—even assuming, which I do not, that his credit application was materially false. The plaintiff must prove something more than that the financial statement was untrue. *Matter of Mangham* 8 B.R. 222 (Bkrtcy.S.D.Ohio 1981).

 In its effort to provide debtors with a meaningful fresh start, Congress limited exceptions to discharge to a relatively few categories of debt. This congressional intent is underscored by legislative history and emphasized by sections 523(c) and 523(d)[4] which limit the application and penalize the inappropriate use of section 523(a)(2)(B). It would therefore appear that claims of nondischargeability of debts under section 523(a)(2)(B) must be scrutinized with special care.[5]

As stated above, the plaintiff in this adversary proceeding failed to sustain the burden of proving any of the elements of section 523(a)(2)(B) although he had the duty to prove each. Accordingly, judgment is hereby entered in favor of the defendant and the debt is discharged.

---

**3.** In *Kirby*, discharge was not denied where the "debtors were encouraged not to fret or worry over any exclusion of information on the applications."

**4.** "The purpose of the provision is to discourage creditors from initiating proceedings to obtaining [sic] a false financial statement exception to discharge in the hope of obtaining a settlement from an honest debtor anxious to save attorney's fees. Such practices impair the debtor's fresh start and are contrary to the spirit of the bankruptcy laws." S.Rep.No.95–989, 95th Cong., 2d Sess. 80 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5866.

**5.** Indeed, the retention of the false financial statement exception to discharge in the code involved compromise. See H.Rep.No.95–595. 95th Cong., 1st Sess. 131 (1977), U.S.Code Cong. & Admin.News 1978, 5787. The Bankruptcy Commission reported, "on balance, the abuses and the harmful effects far outweigh the benefit to creditors by this exception." Commission Report, pt I, at 176, H.R.Doc.No. 93–137 93d. Cong., 1st Sess. (1973).