In re Albert W. KEPPEL and Patsy Keppel, Debtors.

BENEFICIAL CONSUMER DISCOUNT COMPANY, Plaintiff,

v.

Albert W. KEPPEL and Patsy Keppel, Defendants.

Bankruptcy No. 80–00794T (7).
Adv. No. 80–0275.

United States Bankruptcy Court, E. D. Pennsylvania.

Oct. 6, 1981.

Donald F. Krank, Lancaster, Pa., for debtors.

Norman M. Yoffe, Harrisburg, Pa., for plaintiff.

Barry A. Solodky, Lancaster, Pa., trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Plaintiff, Beneficial Consumer Discount Co. [hereinafter, Beneficial], seeks a determination pursuant to 11 U.S.C. § 523(c) (1979) that a debt based upon a loan originally made to the debtors and later refinanced, is nondischargeable as allegedly having been approved in reliance on debtor's false representations. For reasons hereinafter given, we conclude that the debt is dischargeable.[1]

In October of 1979, the debtors entered the premises of a local bulk food retailer, one "Mr. Beef," for the purpose of purchasing a quantity of meat. In order to purchase the desired 1407 pounds of beef, it was necessary for the debtors to finance the purchase through Mr. Beef. Agents or employees of Mr. Beef took various personal and financial information from the debtors, then phoned that information to the plaintiff, Beneficial. Beneficial's employees then recorded the information on a loan application which was never signed by the debtors. Although debtors had no direct contact with Beneficial at this time, the manager of plaintiff's local office approved the loan transaction following an investigation of the information provided by Mr. Beef. The proceeds of the loan were paid directly to Mr. Beef, who delivered the meat to the debtors and then assigned the contract with the debtors to Beneficial. Before any payments were received pursuant to the assigned contract, Beneficial refinanced the loan at the request of the debtors.

A second loan application was prepared, but it is unclear whether the debtor provided additional information; in any event, no new investigation was made with reference thereto. The second loan was approved and provided for a pay off of the first loan, plus the lowering of monthly payments and an extension of the repayment period.

Subsequently, debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1979). Beneficial filed this timely complaint alleging that Mr. Keppel, debtor/husband, had represented to both Mr. Beef and Beneficial that he was the free and clear owner of three (3) tracts of land upon which the debtor's residence was situated. Beneficial further alleged that Mr. Keppel did not, in fact, own any real estate at any time material to this controversy, and without such ownership Beneficial would not have extended credit to the debtors.

Debtors answered, denying that either of them ever made such representations of fee simple ownership, and admitting that they at no time owned any real estate.

In order to prevail on its complaint premised upon Section 523(a)(2)(B),[2] Beneficial must prove the following: use of a statement in writing (1) that is materially false; (2) regarding debtor's financial condition; (3) on which the creditor reasonably relied; (4) that the debtor caused to be made or published with the intent to deceive. *In re Drewett,* 13 B.R. 877 (E.D. Pa.1981).

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Section 523(a)(2)(B) of the Bankruptcy Code provides:

   (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
      (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
         (B) use of a statement in writing—
         (i) that is materially false;
         (ii) respecting the debtor's or an insider's financial condition;

      (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
      (iv) that the debtor caused to be made or published with intent to deceive;
   This section is essentially identical to Section 17(a) of the now-repealed Bankruptcy Act of 1898, and cases construing that section are applicable to Section 523(a)(2)(B), *In re Jones,* 3 B.R. 410, 6 B.C.D. 68 (Bkrtcy.W.D.Va.1980); *In re Whiting,* 10 B.R. 687, 4 C.B.C.2d 543 (Bkrtcy.E.D.Pa.1981).

■ Generally, the creditor has the burden of producing "clear and convincing" evidence of each of these elements. *In re Brown*, 6 C.B.C. 679 (E.D.Va.1975); *In re Barlick*, 1 BCD 412 (D.R.I.1974).

■ While plaintiff has the burden of production of evidence, its presentation of a prima facie case with respect to elements 1, 2 and 3, *supra*, will give rise to a presumption of intent to deceive on the part of the debtors. Faced with this presumption, the debtor then has the burden of producing evidence to rebut the presumption. *In re Tomeo*, 1 B.R. 673 (Bkrtcy.E.D.Pa.1979); *In re Barrett*, 2 B.R. 296 (Bkrtcy.E.D.Pa.1980). If the presumed fact is rebutted, all facts, including the presumed fact of intent to deceive, will be weighed by the court in determining the sufficiency of the evidence.

We now turn to an analysis of the evidence presented in this case.

With regard to the initial investigation by Beneficial, Mr. Neil Sharp, Beneficial's office manager, testified that when a "court house search" failed to verify the Keppels' alleged ownership of real property, he telephoned Mr. Keppel and questioned him concerning his address, the county of his residence, and if the property was in his name [Notes of Testimony, at 12; hereinafter, N.T.] When a second record search likewise provided no verification of debtors' ownership, Mr. Sharp authorized a Beneficial employee, Ms. Beth Lovell, to conduct a tax assessment search, followed by another call to Mr. Keppel. Ms. Lovell testified that Mr. Keppel informed her that he owned the subject property, providing her with the location [N.T. at 37.] A final title search listed the described real estate as owned by "Albert W. Keppel," free and clear [N.T. at 17.]

Mr. Sharp also testified that, according to his office policy, "... under no circumstances, would a non-homeowner have been approved for a line of credit of more than $1,000." [N.T. at 19–20.]

■ Upon consideration of all the evidence of this case, we conclude that Beneficial has not established by clear and convincing evidence that it reasonably relied upon the information given by the debtors in granting this loan. Several facts have led us to this conclusion: First, and perhaps most important, Beneficial had on the loan application debtor's name as "Albert W. Keppel, *Jr.*," (emphasis added), yet the court house search returned the information under the name "Albert W. Keppel." We believe that Beneficial should have inquired further regarding this discrepancy before making the loan, and that this alone could defeat their claim of reasonable reliance. Second, Beneficial granted the loan without ever receiving the signature of the Keppels on the loan application, and without ever having contact other than by telephone with the debtors. Our only conclusion regarding this procedure is that it fails to convince us of reasonable reliance on statements of the debtor. Third, the initial information from the debtors was taken and transmitted by agents or employees of Mr. Beef who never testified regarding the information allegedly supplied by the debtors.

Even assuming that Beneficial had shown reasonable reliance, thereby established a prima facie case and thus raising the presumption of intent to deceive, we believe the debtor's credible testimony regarding the information given to both Mr. Beef and Beneficial adequately rebuts any presumption of intent to deceive. Mr. Keppel testified that he informed Mr. Beef's employees that he lived in his father's house rent free. He explained that his father intended to "sign over" the house to him within an indefinite period of time [N.T. at 48.] He further testified that his conversations with Beneficial's employees dealt exclusively with the whereabouts of his residence so that they might better do a search, but that those conversations never reached the question of ownership of the residence. [N.T. at 49, 50.] We find the debtor's testimony credible, and would give it great weight were a presumption raised as to intent to deceive.

We conclude that Beneficial has not shown reasonable reliance upon a mistatement of fact, and therefore, the complaint

to determine dischargeability must be dismissed.